1  NOSSAMAN LLP
   DREW R. HANSEN (SBN 218382)
2  dhansen@nossaman.com
   SETH M. GOLDSTEIN (SBN 232071)
3  sgoldstein@nossaman.com
   PAVNEET SINGH MAC (SBN 303971)
4  pmac@nossaman.com
   18101 Von Karman Avenue, Suite 1800
5  Irvine, CA 92612
   Telephone:  949.833.7800
6  Facsimile:949.833.7878

7  Attorneys for Defendant
   CARDINAL LOGISTICS MANAGEMENT
8  CORPORATION

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  TIMOTHY PAVLOFF, MARK BEATTY, SALVADOR GONZALEZ, 13  ANITRA HART, LEAN CHAMPMAN, FRAVELL DUANE JOHNSON, FELIX 14  CASTANEDA, MARCOS DOMINGUEZ, RICARDO FLORES, 15  ELAINE FRANK, CHRIS HOLLOWAY, VICTOR MORAN, 16  JORGE MUNOZ, JOE ODETTE, DONALD MASTRANGELLO, AND 17  HAMED RODRIGUEZ on behalf of themselves and all others similarly 18  situated, <br><br> 19           Plaintiffs, <br><br> 20       vs. <br><br> 21  CARDINAL LOGISTICS MANAGEMENT CORPORATION and 22  DOES 1-10, inclusive, <br><br> 23           Defendants. | Case No:   5:20-cv-00363 <br><br> **DEFENDANT CARDINAL LOGISTICS MANAGEMENT CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND DISTRIBUTION OF JUDIDICAL NOTICE** <br><br> [Filed concurrently with Evidentiary Objections, [Proposed] Order, and the Declarations of Holly Hardie, Justin Spaulding, Adelaido Macias, Jeffrey Damon, Christopher Crowder, Leonid Andriyuk, and Thomas McDowell] <br><br> Date: October 5, 2020 <br> Time: 1:30 p.m. <br> Dept.:  9A <br><br> Date Action Filed:  February 24, 2020 <br> Trial Date:  April 27, 2021 |

24

25

26

27

28

---

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

      A.    Cardinal And Its Drivers ....................................................... 2

      B.    Plaintiffs' Allegations .......................................................... 5

III.  COLLECTIVE ACTION PRACTICE UNDER THE FLSA ...................... 6

      A.    In The Absence Of Statutory Guidance, Courts Typically Use A
            Two-Step Process To Evaluate The Propriety Of A Collective .......... 6

      B.    Circumstances Here Do Not Warrant Use Of The "Lenient"
            Standard Typically Used At The First Step And The Court
            Should Subject Plaintiffs' Allegations To A "More Exacting"
            Look ................................................................................. 7

IV.   ARGUMENT ..................................................................................... 9

      A.    Plaintiffs' Collective Action Definitions Are Defective ................ 9

            1.    Plaintiffs' Notice Of Motion And Proposed Order Seek
                  Certification Of Different Groups Than Addressed By
                  Their Supporting Memorandum And Proposed Form Of
                  Notice ....................................................................... 9

            2.    The Groups Defined In Plaintiffs' Notice Of Motion And
                  Proposed Order Are Overbroad ...................................... 11

            3.    The Groups Defined In Plaintiffs' Memorandum And
                  Proposed Notice Are Impermissibly Vague And Fail-
                  Safe ......................................................................... 11

            4.    This Court Lacks Personal Jurisdiction Over Potential
                  Opt-Ins Who Do Not Reside In California And Never
                  Performed Work For Cardinal In California ...................... 12

            5.    Any Collective Must Exclude All Plaintiffs and Potential
                  Opt-ins Whose Claims Have Already Been Released ........... 14

i

B.  Plaintiffs And The Group(s) They Seek To Certify Are Not "Similarly Situated" ........................................................................ 15

    1.  Plaintiffs Misstate The "Similarly Situated" Test ................... 15

    2.  Plaintiffs Have Not Submitted Any Relevant Evidence To Demonstrate They Are "Similarly Situated" ..................... 15

    3.  Plaintiffs Do Not Come Close To Satisfying Their Burden To Demonstrate They Are Similarly Situated ............ 16

        a.  Plaintiffs Cannot Be Similarly Situated—Alike With Regard to Some Material Aspect Of An FLSA Claim—When They Have Not Even Alleged A Cognizable Claim. ...................................... 16

        b.  Cardinal Has No "'Sleeper Berth' Deduction" Policy and Plaintiffs Have Not Established Otherwise ........................................................... 17

        c.  Drivers That Are Subject To Different Compensation Regimes Are Not "Similarly Situated" ....................................................... 18

        d.  Plaintiffs Have Failed To Demonstrate They Are Similarly Situated Because They Have Not (and Cannot) Demonstrate That All "Sleeper Berth" Time Logged By Cardinal Drivers Is Compensable Under the FLSA ............................................. 19

    4.  Plaintiffs and Their Counsel Are Not Adequate ..................... 21

V.  PLAINTIFFS' NOTICE PLAN SHOULD BE REJECTED ..................... 22

VI.  PLAINTIFFS' TOLLING REQUEST MUST BE REJECTED ................... 24

VII.  CONCLUSION ................................................................... 25

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ash v. Bayside Solutions, Inc.*,
  2015 WL 427731 (N.D. Cal. Jan. 30, 2015) ...................................................... 31

*Benson v. W. Coast Const.*,
  2007 WL 445456 (W.D. Wash. 2007) ............................................................... 13

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017) ...................................................................................... 19

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018)...................................................................*passim*

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .......................................................................................... 18

*Douglas v. Xerox Bus. Servs., LLC*,
  875 F.3d 884 (9th Cir. 2017)............................................................................. 22

*Fenn v. Hewlett-Packard Co.*,
  2012 WL 1883530 (D. Idaho May 17, 2012)..................................................... 28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..................................................................................... 18, 19

*Johnson v. Serenity Transp., Inc.*,
  2016 WL 1569984 (N.D. Cal. 2016)................................................................. 31

*Kamar v. RadioShack Corp.*,
  375 F. App'x 734 (9th Cir. 2010)...................................................................... 18

*Kennedy v. LTI Trucking Servs.*, Inc.,
  2019 WL 4394539 (E.D. Mo. 2019) ................................................................. 26

*McNutt v. Swift Transportation Co., LLC*,
  2020 WL 3819239 (W.D. Wash. July 7, 2020)............................................ 19, 20

*Mondragon v. Vermeer Transp.*,
  2009 WL 10672794 (C.D. Cal. 2009) ............................................................... 27

iii

57660115.v6

*Nance v. May Trucking Co.,*
    2014 WL 199136 (D. Or. 2014) ........................................................ 26

*Nance v. May Trucking Co.,*
    685 F. App'x 602 (9th Cir. 2017) .................................................... 26

*Petrone v. Werner Enterprises, Inc.,*
    2017 WL 510884 (D. Neb. 2017) ..................................................... 26

*Rivera v. Saul Chevrolet, Inc.,*
    2017 WL 3267540 (N.D. Cal. 2017) ................................................ 13

*Small v. Univ. Med. Center of So. Nev.,*
    2013 WL 3043454 (D. Nev. Jun. 14, 2013) ..................................... 31

*Stickle v. SCI W. Mkt. Support Ctr.,*
    L.P., 2009 WL 3241790 (D. Ariz. Sept. 30, 2009) ......................... 29

*Stoll v. Runyon,*
    165 F.3d 1238 (9th Cir. 1999) .......................................................... 31

*Walden v. Nevada,*
    2015 WL 1186707 (D. Nev. Mar. 16, 2015) ..................................... 31

*Weirbach v. Cellular Connection, LLC,*
    2020 WL 4674127 (E.D. Pa. Aug. 12, 2020) ................................... 20

*Woods v. Vector Marketing Corp.,*
    2015 WL 1198593 (N.D. Cal. Mar. 16, 2015) ................................. 30

**Statutes**

29 U.S.C. § 216(b) ................................................................................ 12

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................ 27

Local Rule 37-1 .................................................................................... 15

**Regulations**

29 C.F.R. § 782.22(a) ................................................................... 11, 17

49 C.F.R. § 395.3(a) .............................................................................. 9

iv

## I.   INTRODUCTION

Plaintiffs' Motion for Conditional Certification should be rejected.

As explained in the pending Motion to Dismiss [ECF No. 30] submitted by Defendant Cardinal Logistics Management Corporation ("Cardinal"), Plaintiffs' First Amended Complaint ("FAC") fails to state a claim for violation of the FLSA's minimum wage requirement. Nothing Plaintiffs say, and none of the "evidence" Plaintiffs submit, in support of their certification motion provides any reason to revise that conclusion. Indeed, the only concrete evidence Plaintiffs provide about their wages — two wage statements attached to the Declarations of Timothy Pavloff and Mark Beatty — demonstrate that both drivers received well above the minimum wage even if one were to assume that they worked every hour of every day in the workweeks at issue. Given that Plaintiffs have not stated (and cannot state) a cognizable FLSA claim, the Court should grant Cardinal's Motion to Dismiss and moot Plaintiffs' Motion for Conditional Certification.

In the event that the Court were to overlook Plaintiffs' failure to state a facially plausible minimum wage violation and consider the merits of Plaintiffs' Motion, the Court must deny certification because Plaintiffs have failed to carry their burden to demonstrate that they are "similarly situated" to any group of Cardinal drivers.

As an initial matter, the Motion should be denied because it is entirely unclear what group Plaintiffs seek to certify. Plaintiffs' Notice of Motion moved to certify one group, their memorandum in support references another, the proposed order they have submitted would certify a third, and they propose to send notice to a fourth group. Cardinal should not be forced to guess which of these groups Plaintiffs actually want to certify. In the end, however, it doesn't really matter – all of the group definitions Plaintiffs juggle around are defective, either because they are overbroad, incomprehensible, or impermissibly fail-safe.

The Motion must also be denied because Plaintiffs have not submitted any relevant evidence relating to Cardinal; everything they provide concerns an entirely

- 1 -

different entity: "Cardinal Logistics, Inc." And even if the Court were to treat Plaintiffs' evidence as if it were about Cardinal, none of it demonstrates that Plaintiffs are like the members of the group(s) they seek to certify in a way that is material to the resolution of their claims.  Simply put, Plaintiffs do not prove the existence of any common policy that impacted them all in a way relevant to their claims.  To the extent that Plaintiffs or any other drivers have facially plausible minimum wage claims against Cardinal, these claims will turn on facts and issues unique to each individual.

The Court should also deny certification because Plaintiffs and their counsel, through their delay in moving for conditional certification, their failure to serve any discovery to date, and the carelessness exhibited in the moving papers, have demonstrated that they are not adequate representatives of any collective.  At the very least, Plaintiffs' delay in moving for conditional certification given the case schedule warrants giving Plaintiffs' collective action allegations and evidence a "more exacting" look than motions for conditional certification typically receive.

While the Court should not certify anything here, in the event the Court were inclined to grant conditional certification despite all of the aforementioned problems, the Court would still have to limit the scope of Plaintiffs' proposed collective in two ways.  First, the Court cannot certify a nationwide collective because it lacks personal jurisdiction over Cardinal with respect to the claims of non-California residents who never performed work for Cardinal in California. Second, any certification would have to exclude drivers who previously released their claims.

Finally, in the event the Court certifies anything here (which it should not do), it must reject Plaintiffs' proposed notice plan and Plaintiffs' request for equitable tolling of potential opt-ins' claims.

## II.   BACKGROUND

### A.   Cardinal And Its Drivers

Cardinal is a motor carrier specializing in transporting freight by commercial

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

motor vehicle ("CMV") for its customers from pick-up point to destinations throughout the United States.  [Declaration of Holly Hardie ("Hardie Dec.") ¶ 4.] Cardinal employs both intrastate or "local" CMV drivers and interstate or "over the road" ("OTR") CMV drivers to transport its customers' freight. [*Id.* ¶ 5.] The vast majority of Cardinal's drivers are local drivers, which means they drive routes in a single state, are able to return home each night, and have no need to use a sleeper berth. [*Id.*; *see also* Declaration of Thomas McDowell ("McDowell Dec.") ¶¶ 4-7.] Cardinal's OTR drivers drive regionally through several states or throughout the United States. [Hardie Dec. ¶ 5.] Because OTR drivers are unable to get home every single day, there may be occasions where they will use their CMV's sleeper berth, although they could also stay in a hotel or with family or friends. [*Id.*]

Federal regulations govern the "hours of service" of Cardinal's CMV drivers. [*Id.* ¶ 6.] These regulations permit a driver to drive a CMV only during the period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty and only for a maximum of 11 hours during this 14-hour period. 49 C.F.R. § 395.3(a). In addition, they prohibit a driver from driving for any period after having been on duty for 70 hours in any period of 8 consecutive days, although the driver could "restart" the 8-day period used to calculate the number of hours by taking 34 or more consecutive hours off duty. *Id.* § 395.3(a)-(b).

To ensure compliance with these federally-imposed safety limits, the regulations require every CMV driver to record or "log" his or her duty status and information relating to each change in this status. *Id.* § 395.8(a)-(c). The regulations recognize four duty statuses: "driving" time, which means all time spent driving a CMV; "on-duty not driving" time, which means all time, other than "driving" time, spent working or required to be in readiness to perform work; "off duty" time, which means time when the driver is not "on duty" (i.e., not required to be in readiness to work and not under any responsibility to perform work); and "sleeper berth" time, which means any "off-duty" time spent in the sleeper berth of a CMV. [*See*

- 3 -

Declarations of Justin Spaulding ("Spaulding Dec.") ¶ 9, Adelaido Macias ("Macias Dec.") ¶ 7, Jeffrey Damon ("Damon Dec.") ¶ 8, Christopher Crowder ("Crowder Dec.") ¶ 7, and Leonid Andriyuk ("Andriyuk Dec."), ¶ 8.] Cardinal's CMV drivers are free from any and all responsibilities to perform work for Cardinal, or to be ready to work for Cardinal, when they are on, among other things, their rest breaks or their duty status is logged as "off duty" time or "sleeper berth" time. [*Id.* ¶ 9.]

Cardinal requires its CMV drivers to strictly adhere to the "hours of service" regulations and has several policies that CMV drivers must follow to ensure their compliance with the regulations. [Hardie Dec. ¶ 6 & Exs. 1 & 2.] Cardinal equips each of its trucks with an Electronic Logging Device ("ELD"). [*Id.* ¶ 7.] To comply with federal law, Cardinal's CMV drivers must log their duty status in accordance with the hours of service regulations using the ELD provided to them. [*Id.*] When a driver logs a change in their duty status, the ELD automatically records the date, time, geographic location and number of miles driven since the last ELD entry. [*Id.*] However, a driver's ELD logs do not show their precise geographic location at every moment in time. [*Id.*]

In accordance with the regulations, Cardinal's CMV drivers must certify that their ELD log entries are "true and correct" every 24 hours. [*Id.*] The accuracy of a driver's logs is extremely important and Cardinal takes the issue very seriously. [*Id.*] If a driver intentionally falsifies his or her logs, they are subject to discipline by Cardinal, including termination, and could also be fined by the Federal Motor Carrier Safety Administration and lose their Commercial Driver's License. [*Id.*]

Consistent with federal regulations, Cardinal maintains the electronic logs of each of its CMV drivers for six months from the date the driver certifies the log. [*Id.* ¶ 8.] Cardinal does not, nor is it required to, maintain the electronic logs of its CMV drivers beyond the six-month period. [*Id.*]

Compensation for Cardinal's OTR drivers varies across the country. [*Id.* ¶¶ 10-12.] Cardinal pays its California-based OTR drivers an hourly rate equal to

- 4 -

California's minimum wage (currently $13 per hour) for all hours worked that week. [*Id*. at ¶ 10.] Cardinal also pays California OTR drivers a piece-rate for each mile driven along with compensation for other tasks performed (e.g., stops). [*Id*.] It also pays California-based OTR drivers separately for required ten-minute rest breaks. [*Id*.] Cardinal pays OTR drivers based in Washington an hourly rate for all hours worked (generally around $25 per hour) plus overtime and other ancillary compensation. [*Id*. ¶ 11.] Cardinal also pays them for ten-minute rest breaks. [*Id*.] OTR drivers based outside of Washington and California are usually paid on a piece-rate basis (i.e., an amount per mile) along with additional compensation for ancillary tasks, but the pay formula varies depending on the state where the driver is based, the customer/account, and other factors. [*Id*. ¶ 12.]

Regardless of the compensation structure utilized or where the driver is based, when all compensation is considered, all of Cardinal's OTR drivers earn in excess of $20 per hour and routinely more than $25 per hour. [*Id*. ¶¶ 10-12.]

### B.  Plaintiffs' Allegations

In the First Amended Complaint ("FAC"), Plaintiffs allege that they worked as "long-haul truck drivers" for Cardinal and were required to spend 10 hours in "sleeper berths" located in the upper deck of their assigned trucks during each 24-hour period spent on the road. [ECF No. 28 ¶¶ 4, 26.] According to Plaintiffs, instead of compensating its drivers for at least 16 hours per 24-hour period (as Plaintiffs contend is required by Department of Labor regulations), Cardinal "deducted" all "sleeper berth" time —"the full 10 hours" — from its drivers' compensation. [*Id*. ¶¶ 4, 27.] Based on these allegations, Plaintiffs purport to assert a claim for violation of the FLSA's minimum wage requirement and to bring the claim on behalf of a group of supposedly "similarly situated" employees comprised of "[a]ll persons who have been employed as a truck driver or helper (team driver 2) subject to the unlawful 'sleeper berth' deductions under 29 C.F.R. § 785.22(a) within the United States at any time starting three years prior to the filing of the

- 5 -

1  initial compliant until trial of this action." [*Id*. ¶ 36.]

2  **III.   COLLECTIVE ACTION PRACTICE UNDER THE FLSA**

3      **A.   In The Absence Of Statutory Guidance, Courts Typically Use A**

4          **Two-Step Process To Evaluate The Propriety Of A Collective**

5      The FLSA's collective action mechanism permits employees to litigate

6  collectively if they claim a violation of the FLSA, are "similarly situated," and

7  affirmatively opt in to the collective litigation. *Campbell v. City of Los Angeles*, 903

8  F.3d 1090, 1100 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)). However, as the Ninth

9  Circuit has noted, the statute "specifies little else." *Id.* For example:

> 10 It does not prescribe terms for the resulting proceeding. It does not
> 11 provide a definition of 'similarly situated,' on which access to the
> collective mechanism typically turns. It does not establish a process for
> 12 evaluating the propriety of a collective proceeding as litigation unfolds
> 13 — for example, it makes no mention of 'certification' or
> 'decertification' of a collective action. And it says nothing about the
> 14 standard the district court should apply when the collective mechanism
> 15 is challenged.

16 *Id.* at 1100.

17     "Given these gaps, much of collective action practice is a product of

18 interstitial judicial lawmaking or ad hoc district court discretion." *Id.* "In, particular,

19 although nothing in section 216(b) expressly compels it, it is now the near-universal

20 practice to evaluate the propriety of the collective mechanism — in particular,

21 Plaintiffs' satisfaction of the "similarly situated" requirement — by way of a two-

22 step 'certification' process." *Id*. The Ninth Circuit describes the process as follows:

> 23 First, *at or around the pleading stage*, plaintiffs will typically move for
> 24 preliminary certification. Preliminary certification … refers to the
> dissemination of notice to putative collective members, conditioned on
> 25 a preliminary determination that the collective as defined in the
> 26 complaint satisfies the 'similarly situated' requirement of section
> 216(b). At this early stage of the litigation, the district court's analysis
> 27 is typically focused on a review of the pleadings but may sometimes be
> 28 supplemented by declarations or limited other evidence. The level of

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION
57660115.v6

> consideration is "lenient," — sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings.

*Id.* at 1109 (emphasis added) (citations omitted).[1] If preliminary certification is granted, notice is sent to the putative collective, advising the members they may participate in the action by opting in; if it is denied, no notice is sent. *Id.*

> Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery. The employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point. The district court will then take a more exacting look at the plaintiffs' allegations and the record.

*Id.* (citations omitted). If decertification is granted, the opt-ins are dismissed without prejudice to the merits of their individual claims and the original plaintiff is left to proceed alone; if it is denied, the collective proceeds toward trial. *Id.*

## B.   Circumstances Here Do Not Warrant Use Of The "Lenient" Standard Typically Used At The First Step And The Court Should Subject Plaintiffs' Allegations To A "More Exacting" Look

In *Campbell*, the Ninth Circuit recognized that "'[i]n the absence of any statutory directive, the proper means of managing a collective action … is largely a question of "case management,"' and thus a subject of substantial judicial discretion." *Id.* at 1109 (quoting *Hoffmann-La Roche*, *Inc. v. Sperling*, 493 U.S. 165, 174 (1989)). However, "[t]here are of course limits to this discretion." *Id.* Thus,

---

[1] Although the level of consideration is "lenient," preliminary certification is by no means automatic. Courts routinely deny it where the plaintiff "does not identify the 'single decision, policy, or plan' that affected all of the putative collective action members," *see e.g., Rivera v. Saul Chevrolet*, *Inc*., 2017 WL 3267540, at *5 (N.D. Cal. 2017), or produce "only a self-serving declaration, rife with hearsay" and no evidence from other employees that they were subject to the same allegedly unlawful practices as plaintiff. *See, e.g.*, *Benson v. W. Coast Const.*, 2007 WL 445456, at *2 (W.D. Wash. 2007).

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

although "[a]s a general rule, the two-step process has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record," *id.*, rigid adherence to it will not be appropriate in every putative FLSA collective action.  As Plaintiffs' Motion notes, the reason that the initial certification determination is usually made under the "lenient" standard is "because the court generally has only a limited amount of evidence before it" early in a proceeding. [ECF No. 32-1 at 14 of 24.]  But where, as here, the reason the Court only has a limited amount evidence is not because the proceeding is in its early stages, but because Plaintiffs have served no discovery more than six months into the action, applying the "lenient" standard would reward Plaintiffs' failure to vigorously prosecute the action.

Unlike the typical FLSA case where the plaintiff moves for conditional certification "at or around the pleading stage" or shortly after filing, Plaintiffs waited more than six months before seeking certification.  Given the Court's June 1, 2020 Scheduling Order [ECF No. 24], which set the deadline for initial expert reports for December 21, 2020, the discovery cut-off for February 15, 2021 (meaning any discovery motions must be heard by that date) and the motion cut-off for February 22, 2021 (meaning any motions to decertify or for summary judgment must be heard by that date), if the Court were to grant Plaintiffs' motion for certification, Plaintiffs' delay in filing it will have severely prejudiced Cardinal.  To see this, consider that even if (1) the Court granted the motion on the earliest date it could do so (i.e., October 5, 2020), (2) Cardinal were able to provide the notice list within 10 days of the order, and (3) Plaintiffs (or a third-party administrator) were able to mail notice within two weeks of receipt, the earliest date that the proposed 60-day notice period could close is December 28, 2020.

Because "the FLSA leaves no doubt that every plaintiff who opts in to a collective action has party status" and "there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs," 903 F.3d at

- 8 -

1104, Cardinal would be entitled to take discovery from any person who opted into this case. But because Cardinal would not know who has opted in until December 28, 2020 at the very earliest, it would not have had the opportunity to obtain discovery from them before its export report was due on December 21. And even if Cardinal immediately served discovery on opt-in plaintiffs on December 28, 2020, the responses would not be due until January 27, 2021, which would not leave Cardinal enough time to assess them and, in the event of any deficiencies in those responses, to complete the Local Rule 37-1 process and have a discovery motion heard by the discovery cut-off. The existing case schedule would require Cardinal to file a motion for decertification or for summary judgment prior to the time Cardinal could obtain discovery from opt-ins (i.e., Cardinal would have to file its motions by January 25, 2021 so that they could be heard on February 22, 2021). Simply put, this would not be fair or consistent with due process.

The Court should not reward Plaintiffs' complete failure to take discovery and inexcusable delay in moving for conditional certification, which has the potential to deprive Cardinal of any meaningful opportunity to conduct discovery regarding any opt-in plaintiffs or to move for decertification, by applying the "lenient" standard typically used at the first stage of the certification process. Instead it should take the "more exacting look" employed at the second stage.

## IV. ARGUMENT

No matter whether the Court applies the more "lenient" or more "exacting" standard, Plaintiffs have failed to carry their burden to demonstrate that they and the group of employees to whom they propose notice be issued are "similarly situated."

### A. Plaintiffs' Collective Action Definitions Are Defective

#### 1. Plaintiffs' Notice Of Motion And Proposed Order Seek Certification Of Different Groups Than Addressed By Their Supporting Memorandum And Proposed Form Of Notice

Plaintiffs' Motion should be denied for the simple reason that the nature of

- 9 -

57660115.v6

the collective they seek to certify is entirely unclear from their moving papers, which define the group to be noticed in at least four different ways.

Plaintiffs' Notice of Motion states that Plaintiffs move for conditional certification of a group of:

> all persons who worked for Defendant as Drivers, or other positions with similar job titles and/or duties who were classified as exempt at any time since three years prior to the filing of this motion.

[ECF No. 32 at Page ID #:287.]

The Proposed Order Plaintiffs submit with their papers would certify a similar but somewhat narrower group of:

> all current and former employees of the Defendant as Drivers, or other positions with similar job titles and/or duties who were classified as exempt at any time since three years prior to the filing of this motion.

[ECF No. 32-4 at Page ID #:369.]

Although Plaintiffs' Notion of Motion and Proposed Order seek certification of groups of "exempt" workers, their supporting memorandum addresses a completely different group:

> all persons who have been employed as a truck driver or helper (team driver 2) subject to the unlawful 'sleeper berth' deductions under 29 C.F.R. § 785.22(a) within the United States at any time starting three years prior to the filing of the initial complaint until the trial of this action."

[ECF No. 32-1 at Page ID #:300.]

And the form of notice Plaintiffs propose to send to potential opt-ins sets forth yet another group, similar but not identical to that addressed by the memorandum (because, among other variations, it covers a different date range):

> All persons who have been employed as a truck driver or helper (team driver by Cardinal Logistics, Management Corp. ('Cardinal Logistics') and used the sleeper berth subject to the unlawful 'sleeper berth' deductions under 29 C.F.R. § 782.22(a) within the United States at any time starting February 21, 2017 to the present."

[ECF No. 32-2 at Page ID #:321.]

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

57660115.v6

Plaintiffs cannot move to certify one group, propose an order certifying a different group, support their motion with a memorandum about a third group, and propose to send notice to a fourth group. Cardinal should not be forced to guess what Plaintiffs seek or to oppose certification of all the groups mentioned somewhere in Plaintiffs' papers. Nor should the Court grant certification to any group that Plaintiffs move to certify but do not address in their supporting papers or, conversely, to any group addressed in Plaintiffs' supporting papers that Plaintiffs have not actually moved to certify.

### 2. The Groups Defined In Plaintiffs' Notice Of Motion And Proposed Order Are Overbroad

Plaintiffs' Notice of Motion and Proposed Order seek to certify groups of "all" Cardinal drivers who were classified as "exempt."   However, in the context of Plaintiffs' FLSA claims, which are based on allegations that Plaintiffs should have been but were not paid for some periods of time spent in their "sleeper berths," any collective that includes all exempt drivers would be overbroad because the vast majority of Cardinal's drivers are local drivers who get home each night and therefore never use their "sleeper berth." [*See* Hardie Dec. ¶ 5; McDowell Dec. ¶¶ 4-7.]

### 3. The Groups Defined In Plaintiffs' Memorandum And Proposed Notice Are Impermissibly Vague And Fail-Safe

Plaintiffs' Memorandum and proposed form of notice both address groups of drivers "subject to the unlawful 'sleeper berth' deductions under 29 C.F.R. § 785.22(a)." But the phrase "'sleeper berth' deduction" is too vague and incomprehensible to support certification. To the extent Cardinal understands the phrase, it has never had a policy of "deducting" "sleeper berth" time from any driver's wages and therefore could not identify drivers who were subject to such a "deduction" because none exist. [Hardie Decl. ¶ 13; Crowder Dec. ¶ 16; Andriyuk Dec. ¶ 17; Spaulding Dec. ¶ 17; Macias Dec. ¶ 15.] To the extent that Plaintiffs

- 11 -

intend the phrase to have some other meaning, Cardinal has no idea what it is. The groups referenced in the Memorandum and proposed form of notice are simply not defined with sufficient clarity to be certified.

In addition, even if the phrase "'sleeper berth' deduction" were sufficiently definite, the inclusion of the word "unlawful" before it makes the proposed groups impermissibly "fail-safe." "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the [group to be noticed] is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). As the Ninth Circuit has recognized, "[t]hat is palpably unfair to the defendant, and is also unmanageable—for example, to whom should the class notice be sent?" *Id.*

### 4.   This Court Lacks Personal Jurisdiction Over Potential Opt-Ins Who Do Not Reside In California And Never Performed Work For Cardinal In California

To the extent that the Court were to conditionally certify any group here (which it should not), drivers who do not reside in California and never performed any work for Cardinal in California must be excluded from the group because the Court lacks personal jurisdiction over Cardinal with respect to their claims.

Under the Due Process clauses of the Constitution, two types of personal jurisdiction exist: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*. A corporate defendant is subject to general jurisdiction only in forums where it is "fairly regard as at home"—typically only where it is incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 136-139 (2014) (holding that the conduct of substantial continuous business in a forum is insufficient to confer general

- 12 -

jurisdiction). Here, Cardinal is a corporation organized under the laws of North Carolina with its principal place of business in North Carolina. [Hardie Decl. ¶ 2.] Thus, the Court cannot assert general jurisdiction over Cardinal.

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct. of California,* 137 S. Ct. 1773, 1781-84 (2017). For example, in *Bristol-Myers Squibb*, the Supreme Court held that California courts could not exercise specific jurisdiction over the claims of non-residents in a mass tort action brought by more than 600 plaintiffs against a non-resident defendant, even though it could exercise jurisdiction over similar claims of California-resident plaintiffs. 137 S. Ct. 1781-82 ("The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims.").

No Court of Appeals has addressed application of *Bristol-Myers Squibb* to FLSA collective actions and district courts are split over the issue. *See McNutt v. Swift Transp. Co., LLC*, 2020 WL 3819239, at *7 (W.D. Wash. July 7, 2020) (collecting cases). However, given the Ninth Circuit's statements in *Campbell* that "[t]he FLSA leaves no doubt that every plaintiff who opts in to a collective action has party status" and "a collective action is more accurately described as a kind of mass action" than a class action, 903 F.3d at 1104-05, Cardinal submits that *Bristol-Myers Squibb* must apply to collective actions as well as mass actions. As one district court within this Circuit recently explained:

> [T]he Ninth Circuit … stated clearly in *Campbell* that "[t]he FLSA leaves no doubt that 'every plaintiff who opts in to a collective

- 13 -

action has party status.' 903 F.3d 1090, 1104 (9th Cir. 2018) (quoting *Halle*, 842 F.3d at 225). The Court finds that this framing requires the conclusion that FLSA opt-in plaintiffs are analogous to the mass tort plaintiffs in *Bristol-Meyers. See, e.g.*, *Roy*, 353 F. Supp. 3d at 60. Thus, because Swift is not subject to general jurisdiction in Washington, the exercise of personal jurisdiction in this case would require each opt-in plaintiff to demonstrate that their claim arose from or is sufficiently related to Swift's relationship to Washington. The record does not demonstrate a basis to conclude that the wages or pay structure of an out-of-state plaintiff who was not assigned to a Washington terminal was related to Swift's activities within Washington.

. . .

[Accordingly,] the Court concludes that personal jurisdiction is lacking over the claims of Swift employees who did not live or work in Washington.

*McNutt*, 2020 WL 3819239, at *8-9. This Court should reach the same conclusion and find that it lacks personal jurisdiction over anyone who did not live or work in California.[2]

### 5.    Any Collective Must Exclude All Plaintiffs and Potential Opt-ins Whose Claims Have Already Been Released

To the extent that the Court were to conditionally certify any group here (which it should not), it should also exclude from that group all persons whose claims were previously released through an individual settlement or an approved class action settlement.  For example, four of the Plaintiffs named in the FAC (Chris Holloway, Salvador Gonzalez, Marcos Dominguez, and Hamed Rodriguez) and at least 12 other Cardinal drivers agreed to a general release of all claims against

---

[2] Such a conclusion would not preclude a Cardinal employee from ever alleging a putative nationwide FLSA collective action against Cardinal. It would simply mean that they would have to bring the action in North Carolina, where Cardinal is subject to general jurisdiction. *Weirbach v. Cellular Connection, LLC*, 2020 WL 4674127, at *5 (E.D. Pa. Aug. 12, 2020).

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

Cardinal in June 2020 and may not pursue any FLSA claim based on conduct before that date. [Hardie Dec. ¶¶ 24-27 and Exs. 14-17.] Similarly, the FLSA claims of drivers who participated in the *Jenkins v. Cardinal Logistics Mgmt. Corp.* class-action settlements are barred to the extent their claims arose during the period covered by that settlement (i.e., from August 7, 2017 through March 14, 2019). [*Id.* ¶¶ 20-23 and Exs. 12-13.]

### B. Plaintiffs And The Group(s) They Seek To Certify Are Not "Similarly Situated"

Aside from the plethora of problems associated with their class definitions, Plaintiffs fail to demonstrate that they are similarly situated for a host of reasons.

#### 1. Plaintiffs Misstate The "Similarly Situated" Test

As an initial matter, Plaintiffs erroneously claim that "[a] plaintiff satisfies the lenient 'similarly situated' requirement by showing that both he and the other class members were subject to the same exemption classification, performed similar job duties, and were paid in a similar manner." [ECF No. 32 at Page ID #:301.] However, the Ninth Circuit declared in *Campbell* that "[t]he natural answer to . . . what 'similarly situated' means — is . . . that party plaintiffs must be alike with regard to some ***material aspect*** of their litigation. That is . . . a collective can only be maintained — to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims." 903 at 1114 (emphasis added). Here, Plaintiffs have not demonstrated any of their proposed groups are alike with regard to some "material aspect" of their FLSA minimum wage claim.

#### 2. Plaintiffs Have Not Submitted Any Relevant Evidence To Demonstrate They Are "Similarly Situated"

Plaintiffs have proffered no evidence from which the Court could conclude that they and the members of the group they seek to certify are alike in ways that matter to the disposition of their FLSA claims. Although Plaintiffs submit eight declarations (which are invalid for signature defects and/or filled with speculation

- 15 -

57660115.v6

and hearsay) in support of their Motion, none of these declarations relate to Cardinal or suggest that the declarant was subject to a FLSA minimum wage violation. Each declaration instead states the declarant worked for "Cardinal Logistics, Inc.," a company that is not related to or affiliated with Cardinal (i.e., the defendant in this case). [Hardie Dec. ¶ 3.] Plaintiffs have thus not provided any evidence relevant to their putative collective action against Cardinal and their Motion should be denied.

### 3. Plaintiffs Do Not Come Close To Satisfying Their Burden To Demonstrate They Are Similarly Situated

Plaintiffs' complete failure to proffer any relevant evidence is sufficient, in and of itself, to preclude certification. However, even if the evidence Plaintiffs submitted relating to "Cardinal Logistics, Inc." were treated—for the sake of argument only—as relating to Cardinal instead, Plaintiffs would still have failed to satisfy their burden to demonstrate they are "similarly situated."

#### a. Plaintiffs Cannot Be Similarly Situated—Alike With Regard to Some Material Aspect Of An FLSA Claim— When They Have Not Even Alleged A Cognizable Claim.

The relevant unit for determining compliance with the FLSA is the workweek as a whole, not each individual hour within the workweek. *Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 885 (9th Cir. 2017) (adopting the per workweek measure). Thus, to prevail on their FLSA minimum wage claim, Plaintiffs must show that their average hourly wage in at least one workweek—i.e., the total wages they received for the workweek divided by the total hours they worked in that week—was less than the applicable $7.25 minimum wage. Here, Plaintiffs claim that Cardinal had a nationwide policy of "deducting" 10 hours of time from their pay for each period of 24 hours they were "on the road." But even if this claim were true (which it is not), it would not mean that any Cardinal driver, much less all of the drivers in the proposed collective, received less than $7.25 per hour, on average, in any workweek (which is the *sine qua non* of a FLSA minimum wage claim). Neither

- 16 -

the allegations of the FAC nor the declarations Plaintiffs submit in support of the Motion identify any workweek in which a Plaintiff or any other Cardinal driver received, on average, less than the federal minimum wage. Indeed, the only hard evidence that Plaintiffs submit regarding the weekly wages any driver received are the wage statements attached to the Declarations of Plaintiffs Pavloff and Beatty. And both of these statements indisputably show that the driver in question earned more than $7.25 per hour, even assuming that they worked every hour of every day of the 7-day pay period (i.e., 168 hours), which of course they did not. [ECF No. 32-3 at 8 (wage statement showing 7-day earnings of $1,425.80) & 19 (wage statement showing 7-day earnings of $1750.90).] Moreover, evidence submitted by Cardinal confirms that its drivers are paid on average well above $7.25 per hour every pay period and in fact earn at least $20 per hour and often $25 or more (all the way up to $30, $35 or $40 per hour). [*See* Hardie Dec. ¶¶ 10-12; Crowder Dec. ¶ 17; Andriyuk Dec. ¶ 18; Spaulding Dec. ¶ 18; Macias Dec. ¶ 16; Damon Dec. ¶ 16.] Given that Plaintiffs have neither submitted evidence demonstrating nor alleged facts that, if proven, would demonstrate that any driver suffered violation of the FLSA's minimum wage requirement, they cannot be "similarly situated" with respect to a FLSA claim.

    b. <u>Cardinal Has No "'Sleeper Berth' Deduction" Policy and Plaintiffs Have Not Established Otherwise</u>

  As noted above, Plaintiffs' FLSA claim is based on the claim that Cardinal supposedly had a common, nationwide policy of "deducting" 10 hours of "sleeper berth" time from its drivers' pay for each period of 24 hours they were on the road. Although Plaintiffs have submitted declarations from a handful of drivers stating that Cardinal deducted 10 hours of "sleep time" from their pay, even if these statements were true, it would not establish that Cardinal had a common policy applicable to all drivers of making such deductions given that Cardinal's Vice President of Human Resources states that it does not have such a policy and many

- 17 -

Cardinal drivers who would be members of the collective Plaintiffs seek to certify have confirmed that Cardinal never made any such deduction to their pay. [Hardie Dec. ¶ 13; Crowder Dec. ¶ 16; Andriyuk Dec., ¶ 17; Spaulding Dec. ¶ 17; Macias Dec. ¶ 15.]. In the absence of any evidence of a common policy affecting all of the putative collective action members, Plaintiffs have not demonstrated that they are similarly situated.

> c.  Drivers That Are Subject To Different Compensation Regimes Are Not "Similarly Situated"

Plaintiffs and the members of the putative collective are likewise not similarly situated because the compensation system used by Cardinal varies from driver to driver depending on the driver's state of residence and the account the driver works on. [*See* Hardie Dec. ¶¶ 10-12; Andriyuk Dec. ¶¶ 15-16.] For example, over-the-road drivers based in California get paid an hourly rate (currently $13 per hour) for all hours logged as "driving" or "on-duty not driving" that week plus a separate piece rate for the miles driven that week along with additional compensation for a variety of other tasks, such as stop pay and layover pay. They further get paid separately for ten-minute rest breaks. [Hardie Dec. ¶ 10; Crowder Dec. ¶ 15; Andriyuk Dec. ¶ 15; Spaulding Dec. ¶ 16; Macias Dec. ¶ 14; Damon Dec. ¶ 15.] In contrast, OTR drivers based outside of California and Washington[3] generally get paid by the mile for each mile driven along with other compensation for certain tasks. [Hardie Dec. ¶ 12; Andriyuk Dec. ¶ 16.] Because Cardinal's California-based drivers are subject to a different compensation formula than those drivers based outside of California, Plaintiffs (all of whom are California-based drivers) are not "similarly situated" to those members of the proposed collective who are based outside of California.

---

[3] Over-the-road drivers based in Washington state get paid through a third compensation structure (i.e., by the hour plus overtime along with other compensation). [*See, e.g.*, Hardie Dec. ¶ 11.]

- 18 -

d.  <u>Plaintiffs Have Failed To Demonstrate They Are Similarly Situated Because They Have Not (and Cannot) Demonstrate That All "Sleeper Berth" Time Logged By Cardinal Drivers Is Compensable Under the FLSA</u>

Given the FAC's reliance on the incomprehensible term "'sleeper berth' deduction," the theory underlying Plaintiffs' FLSA claim is somewhat opaque. However, it does appear that Plaintiffs are alleging that at least some portion of the time drivers spent in their "sleeper berth" was compensable under the FLSA, i.e., Cardinal did not pay them for that portion of time and, as a result, they did not receive at least the minimum wage for all hours they worked during at least one workweek. But these allegations cannot support a conclusion that Plaintiffs' proposed collective is "similarly situated" given that there is no way to determine whether a particular period of time spent in a "sleeper berth" is compensable except on a driver-by-driver, period-by-period basis.

For example, Plaintiffs' declarants claim that (1) Cardinal told them they were "responsible for the security of the truck at all times – even when [they] weren't driving and were in the sleeper berth" and (2) they were "required to … remain inside the truck when stopped to log time in the sleeper berth and to help protect [Cardinal] and its customer's property." [ECF No. 32-3.] If the claims of these declarants are true, the hours they spent in the "sleeper berth" (or some of them) might be compensable. However, Cardinal denies that it required drivers to remain with their trucks at all times. [Hardie Dec. ¶¶12.] And other members of the putative collective confirm that Cardinal did not require them to remain with their trucks at all times. [Crowder Dec. ¶¶12-14; Andriyuk Dec. ¶¶13-14; Spaulding Dec. ¶¶14-15; Macias Dec. ¶¶12-13; Damon Dec. ¶¶13-14.] They also confirm that Cardinal did not require them to log 10 hours in the "sleeper berth" for every 24-hour period they were on the road; they were free to spend the 10-hour break "off duty" and to use their "off-duty" time as they wished. [Crowder Dec. ¶ 12; Andriyuk Dec. ¶ 12; Spaulding Dec.

- 19 -
OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

¶ 13; Macias Dec. ¶ 11; Damon Dec. ¶ 12.] Thus, when these drivers chose to spend time in the "sleeper berth," such time was not "under the control of" Cardinal. Accordingly, the mere fact that a driver logged time as "sleeper berth" does not establish that such time was compensable.[4]

Similarly, Plaintiffs' declarants state that they sometimes logged their duty status as "sleeper berth" when they were actually engaged in work-related activities, such as "pre-trip work" and "fueling" that should have been logged as "on-duty not driving." [*See, e.g.*, ECF No. 32-3 at 29, 32, 37, 41.] And if these statements are true, then it is possible that the periods of time they falsely logged as "sleeper berth" is compensable under the FLSA (although each driver would have to demonstrate that Cardinal had knowledge of the "off-the-clock" work they were performing for it to be compensable). But Plaintiffs' apparent willingness to submit false logs in violation of federal law (and to admit to submitting false logs) does not establish that they are similarly situated to other drivers. Quite the opposite. Because Cardinal's policies require its drivers to comply with the federal "hours of service" regulations, including the requirement to log their duty status truthfully and accurately, many members of the putative collective report that they complied with the regulations and that is exactly what Cardinal expects from its drivers. [Hardie Dec. ¶ 7; Damon

---

[4] Plaintiffs' belief that time spent in the "sleeper berth" beyond eight hours in a 24-hour period is compensable is incorrect. The time that long-haul drivers are permitted to rest in a sleeper berth is presumptively non-working time that is not compensable under the FLSA, as confirmed by the Ninth Circuit in *Nance v. May Trucking Co.*, 685 F. App'x 602 (9th Cir. 2017), multiple district courts (*see, e.g.*, *Kennedy v. LTI Trucking Servs.*, Inc., 2019 WL 4394539, *3-6 (E.D. Mo. 2019); *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, *5-7 (D. Neb. 2017); *Nance v. May Trucking Co.*, 2014 WL 199136, *6-8 (D. Or. 2014)), and a July 22, 2019 Department of Labor ("DOL") opinion letter. Department of Labor Opinion Letter FLSA2019-10. Moreover, "[t]his presumption—that non-working time in which the employee is relieved of all duties is not compensable—holds true regardless of whether the truck is moving or stationary." *Id.*

57660115.v6

Dec. ¶¶ 7-10; Spaulding Dec. ¶¶ 10-11; Andriyuk Dec. ¶¶ 8-10; Macias Dec. ¶¶ 8-9; Crowder Dec. ¶ 6.]

Given the absence of proof of a company-wide policy requiring Cardinal drivers to remain with their trucks at all times (even while "off-duty"), to spend time in the "sleeper berth" of their trucks, or to falsely log time as "sleeper berth" when performing work, and the evidence that at least some drivers were free to leave their vehicles, to spend their 10-hour breaks "off-duty" and to spend their "off-duty" time as they saw fit, the mere fact that a driver logged a period of time in the "sleeper berth" will be insufficient to establish that the time was compensable. The Court will need to assess each period on a driver-by-driver, period-by-period basis. Accordingly, the putative collective is not similarly situated.

### 4.    Plaintiffs and Their Counsel Are Not Adequate

Plaintiffs' motion for conditional certification should also be denied because the Plaintiffs and their counsel are not adequate representatives of the proposed collective. Although the requirements of Rule 23(a) do not strictly apply to FLSA collective actions, "the adequacy of a class counsel or a class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented." *Mondragon v. Vermeer Transp.*, 2009 WL 10672794, at *3 (C.D. Cal. 2009). The progress of this action to date indicates that Plaintiffs and their counsel will not prosecute the action with appropriate vigor.

For example, Plaintiffs have been dilatory in seeking certification and evidence to support their claim. They filed this action on February 24, 2020, but did not move for certification for over six months until August 27, 2020—the very last day they could do so under the Court's order. [ECF No. 23.] Perhaps Plaintiffs used that time to take discovery and obtain evidence to use in support of the Motion? Not so. They have taken no discovery to date [Desai Dec., ECF No. 33-2 at ¶ 10 ("Neither party has served formal discovery yet.")], even though the Court has set discovery

- 21 -

1    and motion hearing cut-offs for February 2021. Indeed, beyond preparing Plaintiffs'

2    motions for certification, it appears the only work counsel has performed to

3    prosecute the case consists of calls to Cardinal's counsel and several opt-ins that

4    "have taken a few hours." [*Id*.]

5        The certification motion itself also demonstrates a lack of care. In support of

6    the Motion, Plaintiffs submitted a memorandum addressing a different group of

7    employees than their Motion seeks to certify and evidence relating to only six of the

8    16 Plaintiffs. Moreover, <u>none</u> of the evidence Plaintiffs submitted relates to Cardinal.

9    **V.    PLAINTIFFS' NOTICE PLAN SHOULD BE REJECTED**

10       In the event that the Court grants certification, it should reject Plaintiffs'

11   notice plan for a variety of reasons. First, none of the three different starting dates

12   Plaintiffs propose for the beginning of the collective action period are correct.[5]

13   Plaintiffs erroneously assume that the FLSA's three-year limitations period for

14   "willful" violations (as opposed to the statute's default two-year limitations period)

15   even though there is no way a "willful" violation could be found here given that

16   multiple district courts and the Department of Labor have held that sleeper berth

17   time is not compensable. [*See* fn. 4 above.] Moreover, "[a]s for the beginning point

18   of the class period," courts "typically define this date by reaching back . . . from the

19   date of [the] order granting the certification motion," not from the date the original

20   complaint or the motion for certification was filed. *See, e.g.*, *Fenn v. Hewlett-*

21   *Packard Co.*, 2012 WL 1883530, at *4 (D. Idaho May 17, 2012)

22       Second, Plaintiffs' request that Cardinal provide Plaintiffs with a list with

23   each potential opt-in's name, job title, last known address and telephone number,

24   dates of employment, location of employment, employee number, and personal

---

[5] Plaintiffs' proposed form of notice puts the start date at February 21, 2017, their supporting memorandum puts it at February 24, 2017, and their Notice of Motion and Proposed Order puts it at August 27, 2017.

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

57660115.v6

email address (for former employees) and work email address (for current employees) within 10 days of certification is overbroad, intrusive and improper. [ECF No. 32-4 at 2.] Most of this information (e.g., job title, telephone number, dates and location of employment, employee number, and email addresses) is simply not needed to facilitate notice.[6] In addition, there is no way Cardinal could provide the requested information in ten days. Indeed, Cardinal estimates it would take at least 30 days to gather such information (assuming it could identify the drivers for whom it was supposed to provide the information in the first place, which might be an impossible task given the ambiguities in Plaintiffs' proposed definitions). The notice process should also be supervised by (and Cardinal should be directed to provide the notice information to) a third-party administrator (at Plaintiffs' expense) rather than Plaintiffs' counsel.

Third, Plaintiffs' proposed 60-day notice period is far too long given the case schedule. Indeed, even if (1) the Court ordered certification on October 5, 2020, (2) Cardinal were able to provide the notice list to the third-party administrator within 10 days of the order, and (3) the administrator were able to process and send notice out within two weeks of receipt of the list, the notice period would not close until December 28, 2020. This would mean Cardinal would not know who had joined the lawsuit until one week after its deadline to provide its initial expert report and less than two months before the discovery and motion cut-offs, depriving it of a meaningful opportunity to take discovery from opt-in plaintiffs or to move for decertification or for summary judgment. Accordingly, Plaintiffs' proposed 60-day notice period must be rejected as impractical and prejudicial.

Fourth, Plaintiffs' proposed form of notice is replete with substantive and

---

[6] Requests for email addresses (which, in any event, Cardinal does not provide to drivers) and telephone numbers are particularly improper, and courts routinely deny them. *See, e.g.*, *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009).

- 23 -
OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

typographical errors, including: (1) improperly burying Cardinal's denial of Plaintiffs' allegations at the very end of Section I, instead of placing it in a separate paragraph close to the beginning of the Proposed Notice; (2) confusingly referencing "class action" and "California state law"; (3) inaccurately suggesting to potential opt-ins that they "may have to participate in discovery" instead of advising that, as a party plaintiff, they will be subject to discovery if they join; (4) erroneously stating that opt-ins will be represented by Plaintiffs' counsel, when they may retain their own attorneys; (5) improperly telling opt-ins to contact Plaintiffs' attorneys if they believe they are being retaliated against without informing them that they may contact an attorney of their choice; (6) improperly encouraging potential opt-ins to file their own lawsuits against Cardinal if they do not opt in; and (7) referencing to "Cardinal Logistics, Inc." and an attached "'Consent to Join' form" that is not actually attached.

Finally, Plaintiffs' request for a postcard reminder should be rejected because Plaintiffs have not provided an example of what the reminder postcard would say or when it would be sent.

## VI.   PLAINTIFFS' TOLLING REQUEST MUST BE REJECTED

To the extent the Court grants conditional certification in any way, it should reject Plaintiffs' request for equitable tolling of the statute of limitations during the period in which the Motion is pending and/or during the notice period. First, the statute of limitations continues to run on every potential opt-in's claim in every putative FLSA collective action until they file a consent to sue and that is precisely the way Congress designed the statute. *See, e.g.*, *Woods v. Vector Marketing Corp.*, 2015 WL 1198593, at *6 (N.D. Cal. Mar. 16, 2015) ("when Congress enacted Section 256 . . . it was well aware that 'time would lapse between the filing of the collective action . . . by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period.").

Second, equitable tolling is only appropriate "when the plaintiff is prevented

- 24 -

from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Here, Plaintiffs do not even suggest, much less provide evidence of, any "wrongful conduct" on the part of Cardinal or "extraordinary circumstances" that could prevent potential opt-in plaintiffs from filing consents to join this action or their own individual actions in a timely fashion. Instead, they cite several cases for the proposition that tolling is appropriate for the period that a certification motion is pending, but in each of these cases, the court had delayed ruling on the motion. *See, e.g.*, *Walden v. Nevada*, 2015 WL 1186707, at *4 (D. Nev. Mar. 16, 2015) (applying tolling only because court delayed ruling on motion); *Small v. Univ. Med. Center of So. Nev.*, 2013 WL 3043454, at *3-*4 (D. Nev. Jun. 14, 2013) (same). In the absence of such delay, the time a motion for conditional certification is pending is an ordinary foreseeable part of the litigation process that does not warrant equitable tolling. *See, e.g.*, *Johnson v. Serenity Transp., Inc.*, 2016 WL 1569984, at *5 (N.D. Cal. 2016); *Ash v. Bayside Solutions, Inc.*, 2015 WL 427731, at *5 (N.D. Cal. Jan. 30, 2015). Here, to the extent there has been any "delay" in resolving the issue of conditional certification, it is Plaintiffs alone who are responsible for it, because they did not move for conditional certification for more than six months and until the very last day they could so. The request for tolling should thus be denied.

## VII. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: September 14, 2020                         NOSSAMAN LLP


By:          */s/ Drew R. Hansen*
            Drew R. Hansen
            Attorneys for Defendant
            CARDINAL LOGISTICS
            MANAGEMENT CORPORATION

- 25 -

57660115.v6